# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Construction Industry and Laborers Joint Pension Trust Fund et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Western Explosives Systems Company, <br><br> Defendant. | Case No: 2:13-cv-1086-JAD-PAL <br><br> **Order Granting in Part Motion for Default Judgment [Doc. 8]** |

Currently before the Court is the Construction Industry and Laborers Joint Pension Trust Fund's ("Construction Industry") and Board of Trustees of the Construction Industry and Laborers Joint Pension Trust ("Board") (collectively, "Trust Entities") Motion for Default Judgment [Doc. 8], seeking entry of a default judgment against Defendant, Western Explosives Systems Company for defaulting on its pension obligations, as well as damages in the amount of $476,851. Western was served on June 21, 2013, but has not appeared; consequently, the motion is unopposed. For the reasons set forth below, the Motion is granted in part and denied in part, and the Trust Entities are awarded $471,851, plus $139.16 daily prejudgment interest on Western's Withdrawal Liability payments of $362,817, calculated from September 17, 2013, through the date of entry of judgment.

## Background

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1500. Doc. 1 at 1. The Trust Entities allege that until July 1,

2012, Western participated as an "employer" in a trust ("Trust Fund") pursuant to a Collective Bargaining Agreement ("CBA") with the Laborers International Union of North America, Local 872 ("Union"). *Id.* at 4. Under the CBA, Western was obligated to make payments to the trust. *Id.* Western's withdrawal from the Trust Fund on July 1, 2012 exposed it to withdrawal liability. *Id.* On October 10, 2012, the Trust Entities mailed Western a letter detailing its withdrawal-liability payment obligations. *Id.* Although Western had the opportunity to contest the calculated amount or seek arbitration of the same, it failed to take either course of action or to make payments on the amount owed. *Id.* at 5. On January 8, 2013, the Trust Entities notified Western that it was delinquent on the withdrawal-liability quarterly payment due November 1, 2012, and that if payment was not received, Western would be deemed in default and legal action would be commenced. *Id.* Western ignored the demand, and on June 19, 2013, the Trust Entities filed the instant suit. *Id.* at 6.

The Trust Entities seek an award of money damages against Western[1] for (a) the entire amount of the assessed withdrawal liability; (b) interest; (c) liquidated damages; and (d) attorney's fees and costs. *Id.* at 7-8.[2] Western was served with a summons and complaint on June 21, 2013, but failed to timely file an answer or otherwise respond. *See* Docs. 3, 5. On July 24, 2013, the Trust Entities moved for entry of clerk's default under Federal Rule of Civil Procedure 55(a). Doc. 6. The clerk entered default against Western the next day. Doc. 7. On August 29, 2013, the Trust Entities moved for a default judgment. Doc. 8.

## Discussion

The Trust Entities request affirmative relief in the form of monetary damages and properly complied with the requirements for entry of a default judgment by first applying for

---

[1] Although the Trust Entities argue that members of Western's "Control Group" are in default pursuant to 29 U.S.C. §§ 1301(b) and 1399(c)(5), this proposed order contemplates money damages only against Western. Doc. 8 at 4, 125-26. The Court finds no legal or factual basis to enter default judgment on unmodified and anonymous "control group" members.

[2] Finally, the Trust Entities request "other equitable relief as provided by ERISA; and [f]or any other relief the Court deems appropriate." *Id.* at 8. The Trust Entities have not set forward any additional bases for this relief, and the Court declines to consider the same here.

and obtaining a clerk's entry of default pursuant to Fed R. Civ. Proc. 55(a), and then moving for entry of a default judgment pursuant to Fed. R. Civ. Proc. 55(b)(2).[3] Therefore, the Court may consider the merits of their motion.

Fed. R. Civ. Proc. 55 provides a mechanism for obtaining a default judgment against a party who has failed to plead or otherwise respond to claims brought against it. Where this failure is "shown by affidavit or otherwise," the clerk must enter that party's default under Fed. R. Civ. Proc. 55(a). After entry, the movant must request a default judgment from the Court under Fed. R. Civ. Proc. 55(b)(2). *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Trustees of the Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust for Southern Nevada v. Tumbleweed Development, Inc.*, 2013 WL 143378, at *2 (D. Nev. Jan. 11, 2013) (citing *Eitel*). A district court has discretion to enter a judgment by default, which typically turns on the consideration of seven factors: (1) potential prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the amount of money at stake in the action; (5) the potential disputes as to material facts; (6) whether the default was due to excusable neglect; and (7) the strong federal policy favoring adjudications on the merits. *See Eitel*, 782 F.2d at 1471-72. When applied to the facts of this case, these factors demonstrate that a default judgment is warranted.

**A.     Possibility of Prejudice, Substantive Merits, and Sufficiency of Complaint**

The Court finds that the first, second, and third *Eitel* factors all weigh in favor of a default judgment. As to the first factor, the Trust Entities will likely suffer potential prejudice if default judgment is not entered, as Western has failed to respond to the Complaint. As to the second and third factors, the Trust Entities' claims appear both sufficient and to have merit because they properly identify the plaintiffs' authority to assess withdrawal liability premiums against Western pursuant to its agreement, detail the steps required to find Western in default of those obligations, and demonstrate the completion of

---

[3] Fed. R. Civ. Proc. 55(b)(1)-(2) provide that a party against whom a default judgment is sought must not be a minor or an incompetent person. Western is not a natural person.

3

those steps in this instance. The allegations in the Complaint are both meritorious and sufficient under the liberal pleading standards of Fed. R. Civ. Proc. 8. Thus, the second and third *Eitel* factors are satisfied.

**B.     Sum of Money at Stake**

The fourth *Eitel* factor takes into account the amount of money at stake and the seriousness of the defendant's conduct, which involves an assessment of whether the recovery sought is proportional to the harm which the defendant's conduct has caused. *See Trustees of the Bricklayers*, 2013 WL 143378, at *3 (citations omitted). The amount of money at stake here—over $475,000—is plainly significant. *See id.* (finding that amount in controversy of less than $20,000 was significant in ERISA benefits action). The harm that Western's nonpayment has caused is also clearly proportional to the recovery sought, as it reflects awardable statutory damages. Therefore, the fourth factor weighs in favor of obtaining a default judgment.

**C.     Possible Dispute as to Material Facts**

The fifth *Eitel* factor relates to potential disputes about material facts. Here, a number of material facts have already been deemed admitted as a matter of law by virtue of Defendants' failure to respond. "An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. Proc. 8(b)(6). Western has failed to file any responsive pleading or deny the Trust Entities' allegations. Thus, the Court may accept as true those portions of the Trust Entities' Complaint that do not pertain to monetary liability. Moreover, the damages that the Trust Entities request, which might otherwise be disputed, cannot be taken into consideration as a matter of law. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citation omitted) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *see also Trustees of the Construction Industry and Laborers Health and Welfare Trust v. Bust Busters Air Quality Management, L.L.C.*, 2013 WL 876237, at *1-*2 (D. Nev. Mar. 7, 2013) (citing *Geddes*). Accordingly, the Court finds that no genuine dispute of material fact precludes

granting the Trust Entities' Motion, aside from the determination of a monetary award that cannot be deemed admitted by operation of law. Thus, the fifth factor weighs in favor of a default judgment.

### D.   Excusable Neglect

The sixth *Eitel* factor considers whether the default has resulted from excusable neglect. There is no evidence here to suggest excusable neglect. The record reflects that a Summons was issued to Western on June 20, 2013, Doc. 3, which was hand-delivered on Western's resident agent on June 21, 2013. Doc. 5 at 2. The Trust Entities moved for clerk's entry of default on July 24, 2013, after Western's opportunity to answer or otherwise respond expired under Fed. R. Civ. Proc. 12. Doc. 6. Therefore, Western was provided with an adequate opportunity to respond to the Trust Entities' allegations. Moreover, Western had notice as early as October 10, 2012, that the Trust Entities were demanding payment on the amount requested, and they failed to take any action. Doc. 8 at 3, ¶ 7. Thus, the Court finds that the sixth *Eitel* factor weighs in favor of entering a default judgment.

### E.   Decision on the Merits

The final *Eitel* factor takes into consideration the strong policy preference for disposing of cases on their merits. *See Eitel*, 782 F.2d at 1472. Western's failure to answer the Trust Entities' Complaint or otherwise engage in the litigation process casts doubt over the feasibility of any eventual decision on the merits. The Court, therefore, finds that the ordinary policy preference in favor of decisions on the merits will not, without more, preclude entry of a default judgment.

In their totality, the *Eitel* factors weigh in favor of a default judgment.

### F.   Determination of Default Award

The final consideration is the amount of the monetary award. The Trust Entities aver that Western's withdrawal liability is $362,817. Doc. 8 at 5-7. They contend that they are owed a total of $476,851, comprised of (1) withdrawal liability amounts of $362,817; (2) interest on the withdrawal liability amounts of $27,783; (3) liquidated damages of $72,563; (4) attorney's fees and costs of $8,688; and (5) anticipated attorney's fees and costs of

$5,000. Doc. 8 at 8. They offer the documentary support for these amounts (including the Trust agreements giving rise to these liability and demand letters) and the affidavit of Ryan C. Curtis, Esq., Doc. 8, authenticating these documents and attesting to the non-payment of amounts due under the documents.

### 1.     Withdrawal Liability Amounts

The Trust Entities contend that they are owed a total of $362,817 in withdrawal-liability penalties. The Trust Entities have complied with 29 U.S.C. § 1399(e)(5), which provides that "[i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id.* As to the amount itself, 29 U.S.C. § 1401(3)(A) provides that "any determination made by a plan sponsor . . . is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous." *Id.* Despite having been presented with numerous opportunities to do so, *see* Docs. 1, 8 at 31, 34, 37, Western has never contested the Trust Entities' determination of the amount due, and the Court's own evaluation of the Trust Entities' submissions does not reveal any incongruities. Therefore, the Court awards the Trust Entities the total of $362,817 in withdrawal-liability penalties as requested.

### 2.     Interest

The Trust Entities contend that Western is contractually obligated to pay interest of 14% on any delinquent plan contributions under the Policy. Doc. 8 at 85. The Policy in fact specifies that interest on such amounts is to be computed at 14%. *Id.* at 7. The Trust Entities first calculated daily interest on the first quarterly payment amount of $19,136, which yielded $7.34 daily.[4] The daily interest payments accrued between November 1, 2012, when that payment became due, through March 9, 2013, totaled $939. Doc. 8 at 5-6. The Trust Entities then calculated daily interest on the second quarterly payment amount of $19,136 in

---

[4] Although the formula is not stated in the Trust Entities' Motion, this rate is reached by multiplying 19,136 x 0.14 and dividing the product by 365.

6

the same manner from the date that payment became due on February 1, 2013 through March 9, 2013, for a total of $264. *Id.* at 6.[5] Finally, on March 9, 2013, Western defaulted on its original obligations, causing the acceleration of the full $362,817 amount; the Trust Entities calculated daily interest of $139.16 from March 9, 2013 through the anticipated date of entry of judgment, which was September 16, 2013. *Id.* In so doing, the Trust Entities arrived at their total interest amount of $27,783.

"In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment with in the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." 29 U.S.C. § 1451(b). Under section 1145, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." *Id.*; *Carpenters Pension Trust Fund for Northern California v. Moxley*, 734 F.3d 864, 869-71 (9th Cir. 2013) (finding that withdrawal liability arises by operation of statute, and is not a contractual obligation).

Interest on plan contributions is available "[i]n any action . . . by a fiduciary or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded." 29 U.S.C. § 1132(g)(2); *Trustees of the Construction Industry and Laborers Health and Welfare Trust v. Williams Brother, Inc.*, 2013 WL 3285424, at *3 (D. Nev. June 26, 2013) (awarding interest and liquidated damages); *Trustees of Plumbers and Pipefitters Union Local 525 Health and Welfare Trust and Plan v. T.E.N. Mechanical Corp.*, 2013 WL 1249600, at *3 (D. Nev. Mar. 27, 2013) (same). Interest on unpaid contributions "shall be determined by using the rate provided under the plan." 29 U.S.C. § 1132(g)(2)

Based on the foregoing, the Court accepts the amounts of interest that the Trust

---

[5] Although the Trust Entities do not provide evidence that they notified Western on the date they accelerated the interest amounts, they were entitled to do so on March 9, 2013, which fell after expiration of the 60-day grace period running from the date of their January 8, 2013, letter.

Entities request and further awards additional accrued interest in an amount of $139.16 daily, calculated from September 17, 2013, through the date of entry of this judgment. *See Bust Busters Air Quality Management*, 2013 WL 876237, at *3 (applying interest amount through date of entry of judgment); *Trustees of Teamsters Local 631 Security Fund for Southern Nevada v. Knox Installation-Dismantling Services*, 2013 WL 4857897, at *5 (D. Nev. Sept. 9, 2013) (same).

### 3.  Liquidated Damages

The Trust Entities contend that, under the Policy, Western must also pay liquidated damages equal to 20%, which they contend is $72,563, or the result of multiplying $362,817 by 0.2. Doc. 8 at 6. ERISA provides that the Court shall award liquidated damages for delinquent plan contributions. 29 U.S.C. § 1132(g)(2)(C). Courts calculate the damages amount at the rate specified in the documents that control the plan, if that rate is higher than the delinquent interest amount. *Id.* The Policy calls for liquidated damages of 20% on all outstanding "contributions," which is greater than the 14% interest rate on such "contributions." *See* Doc. 8 at 85. It is thus allowable under the prevailing statutes in the full $72,563 amount requested.

### 4.  Attorney's Fees and Costs

The Trust Entities contend that "the Court is required to award the Trust its legal fees and costs as elements of damages under ERISA." Doc. 8 at 7. Rounded to the nearest dollar, the Trust Entities calculate their costs monthly and arrive at a figure of $8,688. *Id.*

ERISA states that the Court *shall* award the plan reasonable attorney's fees and costs "[i]n any action under this subchapter by a *fiduciary* for on behalf of a plan to enforce [delinquent contributions to a plan pursuant to section 1145] of this title in which a judgement in favor of the plan is awarded." 29 U.S.C. § 1132(g)(2); *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1342 (9th Cir. 1988). The Trust Entities alleged in their Complaint that the Trustees of the Trust Fund were ERISA fiduciaries, and also state that Western's payments were not only delinquent, but that Western defaulted on its obligations. Doc. 1 at 3. Therefore, the Trust Entities are entitled to an award of reasonable

attorney's fees and costs.

In ERISA cases, courts base attorney fee award amounts on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Thereunder, the Court determines (1) a reasonable fee by multiplying "the number of hours reasonably expended in the litigation" by (2) a "reasonable hourly rate." *Hensley*, 461 U.S. at 433. The lodestar should only be modified in exceptional cases. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

### a. Past Fees and Costs

The Court considers the experience, skill, and reputation of the attorney requesting fees when determining the reasonableness of an hourly rate. *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). This rate is calculated at the "prevailing market rate in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Curtis Affidavit affirms that he is an attorney of record for the Trust Entities. Doc. 8 at 14. Curtis requests rates of $300-$40 for partner-level work, $225-300 for Associate-level work, and $150-95 for paralegal work performed in the matter. *Id.* at 16. Curtis affirms that these fees are "based on the normal billing rate for Brownstein Hyatt Farber Schreck, LLP's Las Vegas ERISA practice." *Id.*

The Court finds that the rates requested in the Curtis Affidavit are slightly higher than those requested in other ERISA default judgments recently entered by this Court. *See Knox Installation-Dismantling Services*, 2013 WL 4857897, at *6 (finding ranges for $300 for partner-level work, $270-80 for associate-level work, and $160-65 for paralegal work were reasonable). Nevertheless, the Court finds that the rates of $300-40 for partner-level work and $225-300 for associate-level work are reasonable. Although paralegal rates of more than $165 per hour might not be reasonable, it need not actually pass on the higher rates hypothesized by the Trust Entities because, after review of the billing entries, no paralegal appears to have billed at a rate higher than $165.

As to the reasonableness of the hours expended, a movant must "submit evidence

supporting the hours worked." *Hensley*, 461 U.S. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* Curtis's Affidavit states that the Trust was obligated to contact Western, tabulate Western's liability, file suit in federal court, and move for default once Western failed to answer or otherwise respond. Doc. 8 at 16. The Trust Entities have also submitted contemporaneous billing entries from Curtis's law firm, Brownstein Hyatt Farber Schreck. Doc. 8 at 103-20. Upon review of the records, the Court finds that these records satisfy the requirements set forth in *Hensley*. Thus, the Court awards attorney's fees of $8,688 as requested.

### b. Anticipated Fees and Costs

The Trust Entities have also requested that the Court award the arbitrary sum of $5,000 in "anticipated" attorney's fees and costs, which they claim they will likely incur in executing the judgment. Doc. 8 at 8. The Trust Entities provide no supporting documentation for the reasonableness of these costs, and the Policy does not authorize a prospective lump-sum payment of speculative attorney's fees; nor does the lodestar method permit an award of such speculative fees. *See Knox Installation-Dismantling Services*, 2013 WL 4857897, at *6. The Trust Entities' request for these fees and costs is therefore disallowed.

In summary, the Court awards the Trust Entities the following damages against Western:

| | |
|---|---|
| Contributions | $362,817 |
| Interest on the Unpaid Contributions | $27,783 + $139.16 daily interest, calculated from September 17, 2013 through the date of entry of judgment |
| Liquidated Damages | $72,563 |
| Attorney's Fees / Costs (past) | $8,688 |
| **Total:** | **$471,851 + ($139.16 daily interest, calculated from September 17, 2013 through the date of entry of judgment)** |

**Conclusion**

Accordingly, based upon the foregoing reasons, good cause appearing, and no reason for delay,

**IT IS ORDERED** that the Trust Entities' Motion for Default Judgment [Doc. 8] is **GRANTED** in part and **DENIED** in part.

Judgment is hereby entered in favor of the Trust Entities and against Western in the amount of $471,851, plus $139.16 daily interest on Western's Withdrawal Liability payments of $362,817, calculated from September 17, 2013, through the date of entry of judgment. The clerk shall enter judgment accordingly.

DATED: January 27, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE